**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, BOARD OF TRUSTEES, INTERNATIONAL TRAINING INSTITUTE FOR THE SHEET METAL AND AIR CONDITIONING INDUSTRY, BOARD OF TRUSTEES, NATIONAL STABILIZATION AGREEMENT OF THE SHEET METAL INDUSTRY TRUST FUND BOARD OF TRUSTEES, SHEET METAL OCCUPATIONAL HEALTH INSTITUTE TRUST, and the BOARD OF TRUSTEES, NATIONAL ENERGY MANAGEMENT INSTITUTE COMMITTEE<br><br>8403 Arlington Boulevard<br>Fairfax, Virginia 22031<br><br>  Plaintiffs,<br><br>v.<br><br>KNICKERBOCKER PARTITION CORP.<br>260 Spagnoli Road<br>Melville, NY 11747<br><br>and<br><br>KARP ASSOCIATES, INC.<br>260 Spagnoli Road<br>Melville, NY 11747<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-431<br><br><br>**Additional Required Service under 29 U.S.C. § 1132(h) to:**<br><br>**U.S. Department of Labor**<br>**Attn: Assistant Solicitor**<br>**  for Plan Benefits Security**<br>**200 Constitution Ave., N.W.**<br>**Washington, DC 20002**<br><br>**U.S. Department of Treasury**<br>**Attn: Secretary of the Treasury**<br>**1500 Pennsylvania Avenue, NW**<br>**Washington, D.C. 20220** |

## COMPLAINT

Plaintiffs, the separate and individual Boards of Trustees of the Sheet Metal Workers'

National Pension Fund ("NPF"), the International Training Institute for the Sheet Metal and Air

Conditioning Industry ("ITI"), the National Stabilization Agreement of the Sheet Metal Industry

Trust Fund ("SASMI"), the Sheet Metal Occupational Health Institute Trust ("SMOHIT"), and the National Energy Management Institute Committee ("NEMIC" and together with NPF, ITI, SASMI and SMOHIT, referred to as "the Funds"), hereby complain as follows:

## Introduction

1.      This is a civil action brought by employee benefit plans/trust funds or joint labor management organizations, and by the Trustees of the Funds, pursuant to Sections 502(a)(3), (d)(1), (g)(2), and 515 of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d)(1), (g)(2), and 1145, and Section 301(a) of the Labor Management Relations Act of 1947, *as amended* ("LMRA"), 29 U.S.C. § 185. The Funds seek a monetary judgment against Defendants awarding delinquent contributions, accrued interest, liquidated damages, and attorneys' fees and costs, through the date of judgment, as well as those amounts that become due and owing through the date of judgment, pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, Section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement, and the Trust Document governing the Funds.

## Jurisdiction and Venue

2.      Jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132(e), (f), and Section 301(c) of the LMRA, 29 U.S.C. § 185(c). Jurisdiction also lies under 28 U.S.C. § 1331.

3.      Venue is proper under Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), and Section 301(a) of the LMRA, 29 U.S.C. § 185(c), as the Plaintiff Funds are administered in this district with their principal place of business in Fairfax, Virginia.

4.      Pursuant to Section 502(h) of ERISA, 29 U.S.C. § 1132(h), a copy of this Complaint will be served upon the Secretary of United States Department of Labor and the

Secretary of the United States Department of the Treasury by certified mail on or about the date of filing.

**Parties**

5.     Plaintiff Board of Trustees, Sheet Metal Workers' National Pension Fund ("NPF") is the collective name of the trustees of the Sheet Metal Workers' National Pension Fund. The NPF is an employee pension benefit plan within the meaning of Sections 3(2) and (3) of ERISA, 29 U.S.C. §§ 1002(2), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing pension benefits to eligible employees. The NPF is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The Trustees of the NPF are duly authorized Trustees whose duty it is to administer the NPF for the benefit of the participants and beneficiaries of the NPF. The Trustees are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually or jointly referred to as "NPF" in this Complaint. The NPF is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

6.     Plaintiff Board of Trustees, International Training Institute of the Sheet Metal and Air Conditioning Industry ("ITI") is the collective name of the trustees of the International Training Institute of the Sheet Metal and Air Conditioning Industry. ITI is an employee welfare benefit plan within the meaning of Sections 3(1) and (3) of ERISA, 29 U.S.C. §§ 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing apprenticeship training and educational

benefits to eligible employees. ITI is, and at all times material herein has been, a jointly administered trust fund established pursuant to Section 302(c)(6) of the LMRA, 29 U.S.C. § 186(c)(6). The Trustees of ITI are duly authorized Trustees whose duty it is to administer the plan for the benefit of the participants and beneficiaries of ITI. The Trustees of ITI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its Trustees and plan are individually and jointly referred to as "ITI" in this Complaint. ITI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

7. Plaintiff Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund ("SASMI") is the collective name of the trustees of the National Stabilization Agreement of the Sheet Metal Industry Trust Fund. SASMI is an employee welfare benefit plan within the meaning of Section 3(2), (3) of ERISA, 29 U.S.C. § 1002(1), (3), and a multiemployer plan within the meaning of Section 3(37)(A) of ERISA, 29 U.S.C. § 1002(37)(A), established and maintained for the purpose of providing benefits to eligible employees. SASMI is, and at all times material herein, has been a jointly administered trust fund established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trustees of SASMI are duly authorized Trustees whose duty it is to administer SAMSI for the benefit of the participants and beneficiaries of SASMI. The trustees of SASMI are "fiduciaries" within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and are empowered to bring this action pursuant to Sections 502(a)(3) and 502(g)(2) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2). The trust, its trustees and plan are individually or jointly referred to as "SASMI" in this Complaint. SASMI is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

4

8.     Plaintiff Board of Trustees, Sheet Metal Occupational Health Institute Trust ("SMOHIT") is collectively the name of the trustees of the Sheet Metal Occupational Health Institute Trust. SMOHIT a jointly labor-management health and safety organization serving the sheet metal industry established under Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). The trust and its trustees are individually and jointly referred to as "SMOHIT" in this Complaint. SMOHIT is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

9.     Plaintiff Board of Trustees, National Energy Management Institute Committee ("NEMIC") is the collective name of the trustees of the National Energy Management Institute Committee. NEMIC is a labor management committee established pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9), that is funded by contributions under various collective bargaining agreements. The committee and its trustees are jointly and severally referred to as "NEMIC" in this Complaint. NEMIC is administered at 8403 Arlington Boulevard, Fairfax, Virginia 22031.

10.    The Trustees of the Plaintiff Funds bring this action in their collective names or, as necessary or appropriate, in the name of the respective trusts or plans, and their participants, and beneficiaries pursuant to Federal Rule of Civil Procedure 17.

11.    At all times relevant to this action, Defendants Knickerbocker Partition Corp. ("Knickerbocker") and Karp Associates, Inc., ("Karp", and together with Knickerbocker, "Employers" or "Defendants"), have been employers within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and have been engaged in an industry affecting commerce within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). Upon information and belief, at all times relevant to this action, Knickerbocker has been incorporated in the state of New York with a principal place of business at 260 Spagnoli Road,

Melville, NY 11747.  Upon information and belief, at all times relevant to this action, Karp has been incorporated in the state of New York with a principal place of business at 260 Spagnoli Road, Melville, NY 11747.

## Factual Background

12.     At all times relevant to this action, Defendants employed employees represented for the purposes of collective bargaining by the International Association of Sheet Metal, Air, Rail and Transportation Union (formerly known as the Sheet Metal Workers' International Association), Local Union 28 (the "Union"), a labor organization representing employees in an industry affecting interstate commerce.

13.     At all times relevant to this action, Knickerbocker was signatory to, and bound by, a collective bargaining agreement ("Agreement" or "CBA") with the Union. Pursuant to the Agreement, Knickerbocker is obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SMOHIT, SASMI, and NEMIC for all hours worked or paid on behalf of its covered employees within the jurisdiction of Local 28.

14.     Karp is also signatory to a CBA with the Union. Pursuant to the Agreement, Karp is obligated to submit monthly remittance reports and fringe benefit contributions to NPF, ITI, SMOHIT, SASMI, and NEMIC for all hours worked or paid on behalf of its covered employees within the jurisdiction of Local 28.

15.     Pursuant to the CBA, Defendants are obligated to abide by the terms and conditions of the Trust Agreements establishing the Funds, including any amendments thereto and policies and procedures adopted by the Boards of Trustees ("Trust Documents").

16.     Payments due to the Funds are calculated separately for each Fund on remittance reports required to be prepared monthly by each contributing employer. This is a self-reporting

system and the Funds rely on the honesty and accuracy of the employers in reporting hours worked and paid, and in reporting the contributions owed for work by employees.

17.     Without the information contained in the remittance reports, the Funds cannot determine the entire amount of the monthly contributions due to the Funds or the employees' eligibility for benefits.

18.     The completed remittance reports and accompanying contribution payments must be submitted to the Funds no later than the twentieth (20th) day after the end of each month during which covered work was performed and are delinquent if received thereafter.

19.     Article V, Section 3 of the governing Trust Agreement and Section V of NPF's Procedures for the Collection of Contributions both provide that the Funds may audit a contributing employer for the purposes of assuring the accuracy of reports and ensuring that such employer has remitted the appropriate amount of contributions to the Funds.

20.     Pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, the Agreement, the Trust Documents, and Section 301 of the LMRA, 29 U.S.C. § 185, if Defendants fail to timely submit the contractually required remittance reports and contribution payments, and the Funds file a lawsuit to recover the unpaid contributions, Defendants are required to pay the following amounts to the Funds:

a.     Interest on the delinquent contributions at a rate of 0.0233% per day, compounded daily;

b.     Liquidated damages equal to the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed;

c.      Liquidated damages equal to the greater of interest on the delinquent contributions at the above rate or liquidated damages equal to twenty percent (20%) of the delinquent contributions owed upon commencement of litigation; and

d.      The attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts, including the attorneys' fees and costs in this action.

21.     For the months of January 2014 through December 2015, Defendants employed employees within the jurisdiction of Local 28 for whom contributions were owed to the Funds and failed to timely make all the required contributions, despite its obligation to do so under the Agreement, Trust Documents, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

**Relationship Between Knickerbocker and Karp and Their Joint and Several Liability**

22.     Defendant Karp is a successor to Knickerbocker, and thus jointly and severally liable for the Knickerbocker's delinquencies to the Funds.

23.     Upon information and belief, Knickerbocker closed its business in December 2017, when Knickerbocker was allegedly sold to Karp.

24.     Karp had notice of Knickerbocker's liability to the Pension Fund due to the Company's shared management. Knickerbocker was managed by Stewart and Sheila Markbreiter, who are now also employed by Karp and engaged in the management of Karp.

25.     Further, there is a continuity of operations between Knickerbocker and Karp, including continuity of workforce, management, equipment, and location. Both companies have employed the same bargaining unit employee, operate out of 260 Spagnoli Road, Melville, NY 11747, and use the same equipment.

26.     Karp has not only completed worked orders begun by Knickerbocker following the alleged sale, but Knickerbocker is still the name used on various work orders for projects completed by Karp. Knickerbocker continues to issue purchase orders on projects and provide bids for projects performed by Karp.

27.     As a successor of Knickerbocker, Karp is jointly and severally liable for any obligations of Knickerbocker arising from the CBA and is liable for contributions due to the Funds not only on behalf of Karp's covered employees but also on behalf of Knickerbocker's covered employees.

## Count I
*Delinquent Contributions, Liquidated Damages, Interest and Attorneys' Fees and Costs*

28.     Plaintiffs reallege and incorporate Paragraphs 1 through 27.

29.     This claim arises under Sections 502(a)(3) and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185.

30.     Karp is Knickerbocker's successor, and thus, Karp is jointly and severally liable for Knickerbocker's debts to the Funds.

31.     Defendants are obligated, under the terms of the Agreement, to provide contributions to the Funds on behalf of their covered employees. Defendants have failed and refused to fulfill their contractual obligations for owed contributions and resulting interest and liquidated damages as demonstrated by a payroll audit conducted on Knickerbocker by the Funds for the period of January 2014 through December 2017. The audit revealed that Defendants owe contributions, interest, and liquidated damages to the Funds. While contributions remain unpaid, interest continues to accrue on these delinquent contributions and audit fees have been assessed pursuant to the Funds' governing documents.

32.     The audit revealed that Defendants owe contributions in the amount of $78,733.60 for the period of January 2014 through December 2015. In addition to the contribution amounts found due, Defendants owe $28,874.71 in interest (calculated through March 29, 2019), $15,746.72 in liquidated damages, and $1,640.00 in audit testing fees. In total, Defendants owe $124,995.03 to the Funds for unpaid contributions, interest, late fees, and testing fees pursuant to the payroll audit.

33.     Additionally, Knickerbocker late paid contributions for the month of November 2016 and, as a result, Defendants owe $155.37 in liquidated damages for this period.

34.     Prior to commencing this lawsuit, the Funds sent letters and attempted to directly contact Knickerbocker to obtain the outstanding contributions. To date, Knickerbocker has neither meaningfully responded to the Fund's demands nor satisfied their obligations to the Funds. There is little prospect that, lacking judicial compulsion, Defendants will satisfy their obligations to the Funds, and pay the delinquent and unpaid contributions, liquidated damages, interest, and late fees due on the delinquent and unpaid contributions.

35.     Defendants' continued failure to pay the amounts due have caused irreparable harm to the plan participants in the form of loss of earnings and expenses of the Funds, endangered the eligibility of covered members' benefits, and other harm. Defendants' failure and refusal to comply with their obligations creates an atmosphere in the industry that encourages other employers to do the same.

**WHEREFORE**, Plaintiffs request a judgment against Defendants for all amounts due to the Funds as follows:

1.     Declare that Karp is Knickerbocker's successor;

2.     Declare that Karp is liable for Knickerbocker's delinquencies to the Funds;

3.      Declare that Defendants are delinquent in remitting owed contributions to the Funds pursuant to the Agreement;

4.      Award Plaintiffs on behalf of the Funds a judgment for Defendants' delinquent contributions revealed by audit for the period of January 2014 through December 2017 in the total amount of $78,733.60;

5.      Enter judgment against Defendants for interest on all delinquent contributions at a rate of 0.0233% per day, compounded daily, from the date due until the date paid or the date of the judgment in the amount of at least $28,874.71;

6.      Enter judgment against Defendants for liquidated damages in an amount equal to the greater of interest on the delinquent contributions calculated at the above rate, or 20% of the delinquent contributions, in the amount of at least $28,874.71;

7.      Enter judgment against Defendants for liquidated damages at the greater of: fifty dollars ($50.00) or ten percent (10%) of the contributions due for each month of contributions that the Company fails to pay within 30 days after the due date, but pays before any lawsuit is filed, in the amount of $155.37;

8.      Enter judgment for all attorneys' fees and costs incurred by the Funds in pursuing the delinquent amounts as provided by Section 502(g) of ERISA; and

9.      Award such other relief as the Court deems just and proper.

Respectfully Submitted,


_____/s/ Diana M. Bardes_____
Diana M. Bardes (Bar No. 81831)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, D.C. 20036
(202) 783-0010
(202) 783-6088 facsimile
dbardes@mooneygreen.com
Counsel for Plaintiff Funds


Dated: April 11, 2019

## CERTIFICATE OF SERVICE UNDER 29 U.S.C. § 1132(h)

I hereby certify that on this 11th day of April, 2019, a true and correct copy of the foregoing COMPLAINT UNDER ERISA FOR DELINQUENT CONTRIBUTIONS, INTEREST, LIQUIDATED DAMAGES, ATTORNEYS FEES, AND COSTS was served via certified mail on:

    U.S. Department of Labor
    Attn: Assistant Solicitor for Plan Benefits Security
    200 Constitution Ave., N.W.
    Washington, DC 20002

    U.S. Department of Treasury
    Attn: Secretary of the Treasury
    1500 Pennsylvania Avenue, NW
    Washington, D.C. 20220

                      /s/ Diana M. Bardes
                      Diana M. Bardes